IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CBS OUTDOOR LLC, | No. C 14-01598 SI |
| Plaintiff, | **ORDER DENYING DEFENDANTS' MOTION TO DISMISS** |
| v. | |
| CALIFORNIA MINI STORAGE, LLC; NORTH RICHMOND PROPERTIES, INC., | |
| Defendants. | |

A motion by defendants California Mini Storage, LLC and North Richmond Properties, Inc. to dismiss plaintiff CBS Outdoor LLC's first amended complaint is scheduled for a hearing on August 1, 2014. Docket No. 21. Pursuant to Civil Local Rule 7-1(b), the Court determines that this matter is appropriate for resolution without oral argument and VACATES the hearing. For the reasons set forth below, the Court DENIES defendants' motion to dismiss.

**BACKGROUND**

The following allegations are taken from plaintiff's first amended complaint. Docket No. 20, First Amended Complaint ("FAC").

Plaintiff CBS Outdoor LLC ("CBS") is a citizen of Delaware and New York, and defendants California Mini Storage. Inc. ("CMS") and North Richmond Properties, Inc. ("NRP") are citizens of California. FAC ¶ 3. In 2001, plaintiff's predecessor, Advertising Display Systems, entered into a lease agreement with CMS to install and maintain a billboard structure ("Advertising Structure") on NRP's

property.[1] *Id.* ¶ 8. The lease agreement specifies that the lessee, Advertising Display Systems, retained ownership of the billboard structure and could remove it upon termination of the lease.[2] *Id.* ¶ 9. Plaintiff subsequently assumed the role of lessee under the agreement by acquiring all of Advertising Display Systems's rights, title, and interest in the Advertising Structure and the lease, including the ownership of and right to remove the Advertising Structure from the property. *Id.* ¶ 10.

On January 31, 2014, plaintiff notified CMS that it intended to terminate the lease and remove the Advertising Structure from the property. FAC ¶ 11. On or about February 5, 2014, plaintiff applied for a permit to remove the billboard structure from the San Francisco Planning Department, which was denied. *Id.* ¶¶ 12, 16-17. Plaintiff alleges that its application for a removal permit was denied by the Planning Commission because defendants, including the owner of the subject property NRP, objected to the issuance of the permit and CMS stated that it may own the Advertising Structure. *Id.* ¶¶ 13-14, 16; *see also* Docket No. 22-3, Purvis Decl. ¶¶ 4-6. Plaintiff terminated the lease on February 28, 2014. FAC ¶ 17. On March 28, 2014, plaintiff sent a letter to CMS detailing its ownership of, and right to remove, the Advertising Structure from the property under the terms of the lease. *Id.* ¶ 18. Plaintiff alleges that despite its efforts, CMS has refused, and continues to refuse, to allow plaintiff to remove its Advertising Structure from the property. *Id.* ¶ 19.

On April 7, 2014, plaintiff filed a complaint against defendants, alleging causes of action for: (1) breach of contract; (2) conversion; (3) trespass to chattels; (4) unjust enrichment; (5) intentional interference with contractual relations; and (6) declaratory judgment. Docket No. 1, Compl. On June 13, 2014, plaintiff filed a first amended complaint. FAC. By the present motion, defendants move pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6) to dismiss the complaint (1) for lack

---

[1] CMS leases the property from NRP for the purposes of operating a public storage facility, and, as part of that lease, CMS has the right to lease a portion of the property for outdoor advertising purposes. FAC ¶ 7.

[2] Section 3 of the Lease agreement provides: "Lessee shall retain ownership of any electrical fixtures and advertising structure placed upon lessor's property and may remove same upon termination of this Lease, notwithstanding the fact that said property may constitute real estate fixtures." FAC ¶ 9. The agreement also authorized the recovery of reasonable attorneys' fees and costs to the prevailing party in the event of a breach of the lease. *Id.* ¶ 24.

of subject matter jurisdiction, (2) based on the doctrine or abstention, and (3) for failure to exhaust administrative remedies. Docket No. 21, Def.'s Mot.

## LEGAL STANDARD

### I.     Rule 12(b)(1) Motion to Dismiss

Federal Rule of Civil Procedure 12(b)(1) allows a party to challenge a federal court's jurisdiction over the subject matter of the complaint. *See* Fed. R. Civ. Pro. 12(b)(1). The party invoking the jurisdiction of the federal court bears the burden of establishing that the court has the requisite subject matter jurisdiction to grant the relief requested. *See Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994) (citation omitted). A complaint will be dismissed if, looking at the complaint as a whole, it appears to lack federal jurisdiction either "facially" or "factually." *Thornhill Pub'g Co., Inc. v. General Tel. & Elecs. Corp.*, 594 F.2d 730, 733 (9th Cir. 1979). When the complaint is challenged for lack of subject matter jurisdiction on its face, all material allegations in the complaint will be taken as true and construed in the light most favorable to the plaintiff. *NL Indus. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986). In deciding a Rule 12(b)(1) motion which mounts a factual attack on jurisdiction, "no presumptive truthfulness attaches to plaintiff's allegations, and the existence of disputed material facts will not preclude the trial court from evaluating for itself the merits of jurisdictional claims. Moreover, the plaintiff will have the burden of proof that jurisdiction does in fact exist." *Mortensen v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977).

### II.    Rule 12(b)(6) Motion to Dismiss

To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a Defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). While courts do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to

"raise a right to relief above the speculative level." *Twombly*, 550 U.S. at 544, 555. "A pleading that offers 'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action will not do.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 555). "Nor does a complaint suffice if it tenders 'naked assertion[s]' devoid of 'further factual enhancement.'" *Id.* (quoting *Twombly*, 550 U.S. at 557). "While legal conclusions can provide the framework of a complaint, they must be supported by factual allegations." *Id.*

In reviewing a Rule 12(b)(6) motion, a district court must accept as true all facts alleged in the complaint, and draw all reasonable inferences in favor of the plaintiff. *See al-Kidd v. Ashcroft*, 580 F.3d 949, 956 (9th Cir. 2009). However, a district court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). If the Court dismisses a complaint, it must decide whether to grant leave to amend. The Ninth Circuit has "repeatedly held that a district court should grant leave to amend even if no request to amend the pleading was made, unless it determines that the pleading could not possibly be cured by the allegation of other facts." *Lopez v. Smith*, 203 F.3d 1122, 1130 (9th Cir. 2000) (citations and internal quotation marks omitted).

**DISCUSSION**

**I.     Subject Matter Jurisdiction**

Defendants argue that the Court does not have diversity jurisdiction, because the amount in controversy does not exceed $75,000. Def.'s Mot. at 4. In response, plaintiff argues that the court has diversity jurisdiction because the amount in controversy requirement has been satisfied. Docket No. 22, Pl.'s Opp'n at 3.

Federal courts are courts of limited jurisdiction. *United States v. Marks*, 530 F.3d 799, 810 (9th Cir. 2008). Without subject matter jurisdiction "the court cannot proceed at all in any cause. Jurisdiction is power to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause." *Steel Co. v. Citizens for a Better*

4

*Environment*, 523 U.S. 83, 94 (1998). A federal court's subject-matter jurisdiction can never be waived or forfeited, objections to the court's jurisdiction may be resurrected at any point in the litigation, and courts are obligated to consider *sua sponte* whether subject matter jurisdiction exists. *Kwai Fun Wong v. Beebe*, 732 F.3d 1030, 1035-36 (9th Cir. 2013). As the party invoking federal jurisdiction, plaintiff bears the burden of establishing the existence of subject matter jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.*, 511 U.S. 375, 377 (1994).

Here, plaintiff alleges that the Court has diversity jurisdiction over the action. Compl. ¶ 2. Diversity jurisdiction requires complete diversity of citizenship among the parties and a minimum amount in controversy of over $75,000. *See* 28 U.S.C. § 1332. Complete diversity of citizenship requires that not a single plaintiff is a citizen of the same state as any of the defendants. *Exxon Mobil Corp. v. Allapattah Servs.*, 545 U.S. 546, 553 (2005). "Where the plaintiff originally files in federal court, the amount in controversy is determined from the face of the pleadings. The amount in controversy alleged by the proponent of federal jurisdiction—typically the plaintiff in the substantive dispute—controls so long as the claim is made in good faith." *Geographic Expeditions, Inc. v. Estate of Lhotka*, 599 F.3d 1102, 1006 (9th Cir. 2010) (citation and internal quotation marks omitted). To justify dismissal for lack of subject matter jurisdiction, it must appear to a legal certainty that the claim is really for less than the jurisdictional amount. *Id.*

The parties do not dispute that there is complete diversity among the parties. The parties do dispute whether the amount in controversy requirement has been satisfied. Plaintiff argues that the amount in controversy requirement is satisfied by taking into account the lost value to defendants of the prospective revenue generated by the Advertising Structure if defendants are prevented from taking possession of the structure and it is removed from their property. Pl.'s Opp'n at 3-4. In response, defendants argue that the prospective lost revenue to them should not be taken into account because it is entirely speculative and there is no pending revenue-generating transaction. Docket No. 27, Def.'s Reply at 3-4.

"In actions seeking declaratory or injunctive relief, it is well established that the amount in controversy is measured by the value of the object of the litigation." *Hunt v. Wash. State Apple Adver.*

5

*Comm'n*, 432 U.S. 333, 347 (1977). The value of the object of the litigation may be examined from either the plaintiff's or the defendant's point of view. *See McCauley v. Ford Motor Co.*, 264 F.3d 952, 958 (9th Cir. 2001); *Snow v. Ford Motor Co.*, 561 F.2d 787, 788 (9th Cir. 1977). District courts in the Ninth Circuit and several Circuit Courts have held that diversity "jurisdiction is lacking where the monetary value of the injunctive relief is 'too speculative and immeasurable to satisfy the amount in controversy requirement.'" *Varadarajan v. U.S. Cricket Ass'n, Inc.*, No. 12-CV-01306-LHK, 2012 WL 1252783, at *8 (N.D. Cal. Apr. 13, 2012) (quoting *Ericsson GE Mobile Communc'ns Inc. v. Motorola Communc'ns & Elecs., Inc.*, 120 F.3d 216, 221-22 (11th Cir. 1997)); *accord PeriCor Therapeutics, Inc. v. Am. Arbitration Ass'n*, No. CV 13-00049 GAF JCGX, 2013 WL 654123, at *2 (C.D. Cal. Feb. 20, 2013); *see also Macken ex rel. Macken v. Jensen*, 333 F.3d 797, 800-01 (7th Cir. 2003) (dismissing equitable action where "the monetary value of a controversy cannot be estimated."). "The Ninth Circuit does not appear to have expressly endorsed this approach or to have had opportunity to address it." *Varadarajan*, 2012 WL 1252783, at *8.

In the FAC, plaintiff requests an injunction enjoining the defendants from taking possession of, or making use of, the Advertising Structure for their own benefit. FAC at 10. Plaintiff argues that this requested injunction would cost defendants more than $75,000 in forgone prospective revenue. Pl.'s Opp'n at 4. In support of this assertion, plaintiff has provided the Court with evidence showing that prior to the termination of the lease, plaintiff was paying CMS $111,636 in rent per year ($9,303 per month). Docket No. 22-2, Steinbacher Decl. ¶ 3. Plaintiff has also provided evidence showing that the typical sale price for such a structure is ordinarily based on some reasonable multiplier of yearly rent or sales income generated, which, in the present case, would be well in excess of $75,000. *Id.* ¶ 4. Defendants do not dispute these facts. Rather, defendants argue that any potential lost revenue to them is entirely speculative because defendants do not have any lucrative transaction related to the Advertising Structure currently pending. Def.'s Reply at 3-4.

The Court finds defendants' argument unpersuasive. Defendants must bear in mind that the Court can only dismiss the present action for failure to satisfy the amount in controversy requirement if it appears to a legal certainty that the claim is really for less than the jurisdictional amount. *See*

*Geographic Expeditions*, 599 F.3d at 1006. At this time, the Court cannot say to a legal certainty that the loss to defendants due to the Court's granting the requested injunction would not be in excess of $75,000. The potential lost revenue to defendants may be somewhat speculative. But, defendants have not stated in their motion or in a declaration that if they prevail in the present action, they would not attempt to derive any income from the structure or attempt to sell the structure.[3] Without such a statement, the Court cannot say to a legal certainty that the object of the litigation does not exceed $75,000, and the potential loss to defendants is not too speculative or immeasurable to satisfy the amount in controversy requirement. Accordingly, plaintiff has satisfied the amount in controversy requirement, and the Court declines to dismiss the action for lack of diversity jurisdiction.[4]

## II.   Abstention

Defendants argue that the action should be dismissed based on the doctrine of abstention set forth in *Burford v. Sun Oil Co.*, 319 U.S. 315 (1943). Def.'s Mot. at 5-8. In response, plaintiff argues that *Burford* abstention is not applicable to the present action because the case does not involve a complicated state regulatory scheme and because retaining jurisdiction over the action will not impair the State's or the City's efforts to maintain its policies. Pl.'s Opp'n at 5-8.

In *Burford*, the Supreme Court held: "Although a federal equity court does have jurisdiction of a particular proceeding, it may, in its sound discretion, . . . refuse to enforce or protect legal rights, the exercise of which may be prejudicial to the public interest; for it is in the public interest that federal courts of equity should exercise their discretionary power with proper regard for the rightful independence of state governments in carrying out their domestic policy." *Burford*, 319 U.S. at 317-318

---

[3] Indeed, the fact that defendants have affirmatively prevented plaintiff from removing the structure from the property shows that they have some intention or desire to use the structure in the future.

[4] In its opposition, plaintiff also argues that the amount in controversy requirement has been satisfied based on its request for attorney's fees. Pl.'s Opp'n at 4-5. Because plaintiff has satisfied the amount in controversy requirement based on the loss to defendants that would occur from the requested injunction, the Court declines to address whether plaintiff has also satisfied the amount in controversy requirement based on its request for attorney's fees.

(internal quotations and citations omitted). *Burford* abstention is designed to protect "complex state administrative processes from undue federal interference." *New Orleans Pub. Serv., Inc. v. Council of City of New Orleans*, 491 U.S. 350, 361 (1989). *Burford* abstention is appropriate only if the case presents "difficult questions of state law bearing on policy problems of substantial public import whose importance transcends the result in the case then at bar," or if decisions in a federal forum "would be disruptive of state efforts to establish a coherent policy with respect to a matter of substantial public concern." *Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 814 (1976). In addition, the Ninth Circuit has "required certain factors to exist before a district court can abstain under *Burford*." *S. Cal. Edison Co. v. Lynch*, 307 F.3d 794, 806 (9th Cir. 2002).

> "[F]irst[,] that the state has chosen to concentrate suits challenging the actions of the agency involved in a particular court; second, that federal issues could not be separated easily from complex state law issues with respect to which state courts might have special competence; and third, that federal review might disrupt state efforts to establish a coherent policy."

*Id.* The Supreme Court has cautioned that *Burford* abstention "is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances." *Colorado River*, 424 U.S. at 813.

Here, defendants argue that *Burford* abstention is appropriate because the City of San Francisco charged the Planning Department with the sole authority to administer and enforce the Planning Code, which includes regulations related to whether to issue a removal permit. Def.'s Mot. at 7. Defendants further note that the City has also set forth a procedure whereby plaintiff may appeal the City's denial of its application for a removal permit to the Board of Appeals, and if need be to make a further appeal to the Superior Court of San Francisco. *Id.* at 7-8 (citing Cal. Code Civ. Pro. Part III Title 1). However, the fact that the City allows the appeals to be heard by a general superior court means that defendants have failed to satisfy the first factor of the Ninth Circuit's test—that the state or local government has chosen to concentrate suits challenging the administrative action in a particular court. *Burford* abstention is improper where the state or local law provides for judicial review in any court of general jurisdiction in the locality rather than concentrating review in a "particular or specialized" court. *See*

*City of Tucson v. United States W. Communs.*, 284 F.3d 1128, 1133 (9th Cir. 2002) ("Unlike *Burford*, we find no designation by Arizona's Constitution or statutes of any particular state court to review grants or denials of franchises within Arizona."); *Kirkbride v. Continental Casualty Co.*, 933 F.2d 729, 734 (9th Cir. 1991) ("The fact that California has not established a specialized court system to resolve disputes over insurance policy coverage convinces us that application of the *Burford* doctrine to this case is unwarranted.").

In addition, *Burford* abstention is only proper where the action involves issues of state law "bearing on policy problems of substantial public import" or where the state has engaged in efforts to establish a "coherent policy with respect to a matter of substantial public concern." *Colorado River*, 424 U.S. at 814. But, defendants have failed to provide the Court with any evidence or argument showing that the issuing of removal permits by the City of San Francisco is a matter of substantial public import or substantial public concern.

Finally, the Court notes that defendants have at most only shown the existence of a local administrative scheme. Defendants have failed to show that the administrative scheme is complex or that the resolution of the present action involves complex or difficult issues of state law. *See Morros*, 268 F.3d at 705 (stating that *Burford* abstention only "allows courts to 'decline to rule on an essentially local issue arising out of a *complicated state regulatory scheme*.'" (emphasis added); *see also Almodovar v. Reiner*, 832 F.2d 1138, 1141 (9th Cir. 1987) (finding *Burford* abstention inapplicable where "[t]he state issues in th[e] case relate[d] only to two simple statutes, not to any complex web of administration"). The mere existence of a state or local administrative scheme does not by itself justify the application of *Burford* abstention. *See New Orleans*, 491 U.S. at 362 ("While *Burford* is concerned with protecting complex state administrative processes from undue federal influence, it does not require abstention whenever there exists such a process, or even in all cases where there is a 'potential for conflict' with state regulatory law or policy."). Accordingly, the Court concludes that *Burford* abstention is not appropriate in the present case, and the Court declines to dismiss the action under this doctrine. *See City of Tucson*, 284 F.3d at 1132 ("District courts have an obligation and a duty to decide cases properly before them, and '[a]bstention from the exercise of federal jurisdiction is the exception,

not the rule.'" (quoting *Colorado River*, 424 U.S. at 813)).

### III.     Administrative Exhaustion

Defendants argue that the action should be dismissed because plaintiff has failed to exhaust its state administrative remedies prior to filing the present action. Def.'s Mot. at 8-9. Defendants note that plaintiff has the ability to appeal the Planning Department's denial of its application for a removal permit to the City's Board of Appeals, but plaintiff failed to do so and instead filed the present action. *Id.* at 9. In response, plaintiff argues it was not required to exhaust its state administrative remedies prior to filing the present action because its claims in the present action do not challenge the City's denial of its application for a removal permit. Pl.'s Opp'n at 9. In addition, plaintiff argues that exhaustion is not required in the present case because it would be futile. *Id.* at 10-11.

"In general, a party must exhaust administrative remedies before resorting to the courts." *Coachella Valley Mosquito & Vector Control Dist. v. Cal. Pub. Employment Relations Bd.*, 35 Cal. 4th 1072, 1080 (2005). "Under this rule, an administrative remedy is exhausted only upon 'termination of all available, nonduplicative administrative review procedures.'" *Id.* The principle behind such a requirement is to protect the administrative agency's authority and to promote judicial economy by requiring parties to attempt to resolve an issue before an agency rather than litigating it in court. *Id.*; *Woodford v. Ngo*, 548 U.S. 81, 89 (2006). After a party has exhausted his or her administrative appeals, the sole avenue for seeking judicial review of the agency action is a petition for writ of mandate filed in a California superior court. Cal. Civ. Proc. Code § 1094.6(b).

The Court agrees with plaintiff that the exhaustion of state administrative remedies is not required in the present action. Plaintiff's claims relate to a lease dispute between two private parties. *See* FAC ¶¶ 25-55. There are no claims in the FAC that challenge the City Planning Commission's decision to deny plaintiff's application for removal permit. Plaintiff alleges that the Planning Commission denied its application because defendants, including the owner of the subject property, objected to the issuance of the permit. *Id.* ¶ 16; *see also* Docket No. 22-3, Purvis Decl. ¶¶ 4-6. Plaintiff's claims do not challenge this determination by the Planning Commission or assert that it was

10

improper for the Planning Commission to deny the permit based on defendants' objections. Rather, the claims challenge who is the owner of the Advertising Structure and whether defendants can properly object to plaintiff's attempt to obtain a removal permit under the terms of the Lease Agreement. Because plaintiff's claims do not challenge any of the Planning Commission's administrative actions, there is no exhaustion requirement in this case.

In addition, "[t]he doctrine requiring exhaustion of administrative remedies is subject to exceptions. Under one of these exceptions, '[f]ailure to exhaust administrative remedies is excused if it is clear that exhaustion would be futile.'" *Coachella Valley*, 35 Cal. 4th at 1080 (citation omitted). In addition, "[t]he doctrine does not apply when the administrative remedy is inadequate." *City of San Jose v. Operating Engineers Local Union No. 3*, 49 Cal. 4th 597, 609 (2010). Plaintiff's application for a removal permit was denied by the Planning Commission because CMS stated that it may own the Advertising Structure and defendants objected to the issuance of the permit. FAC ¶¶ 13-14, 16; Docket No. 22-3, Purvis Decl. ¶¶ 4-6. Plaintiff alleges that under the terms of the lease agreement, plaintiff, not defendants, is the owner of the Advertising Structure and that defendants have no right to object to the structure's removal. FAC ¶¶ 9, 10, 53. Therefore, resolution of the present dispute requires a determination of who is the proper owner of the Advertising Structure. Defendants have failed to provide the Court with any argument or authority showing that the City Planning Commission has the authority to resolve the parties' dispute over who is the owner of the Advertising Structure under the terms of the lease agreement. To the contrary, plaintiff has provided the Court with a declaration from a Code Enforcement Planner with the San Francisco Planning Department stating that the City does not involve itself in private lease disputes between owners, lessors, and/or lessees related to general advertising signs, nor is it capable of resolving such disputes. Docket No. 22-3, Purvis Decl. ¶ 7. Therefore, exhaustion in this case is also not required because the administrative remedy is inadequate and exhaustion would be futile. Accordingly, the Court declines to dismiss the action for failure to exhaust state administrative remedies.

# CONCLUSION

For the foregoing reasons, the Court DENIES defendants' motion to dismiss. Docket No. 21.

**IT IS SO ORDERED.**

Dated: July 31 , 2014

SUSAN ILLSTON
United States District Judge