IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CBS OUTDOOR LLC, | No. C 14-01598 SI |
| Plaintiff, | **ORDER GRANTING PLAINTIFF'S MOTION TO DISMISS DEFENDANTS' COUNTERCLAIMS** |
| v. | |
| CALIFORNIA MINI STORAGE, LLC and NORTH RICHMOND PROPERTIES, INC., | |
| Defendants. | |

Plaintiff's motion to dismiss defendants' counterclaims is scheduled for a hearing on October 17, 2014. Pursuant to Civil Local Rule 7-1(b), the Court finds this matter appropriate for resolution without oral argument and hereby VACATES the hearing. Having considered the parties' arguments presented by the parties in the papers submitted to the Court, the Court hereby GRANTS plaintiff's motion to dismiss counterclaims with leave to amend.[1]

## BACKGROUND

This dispute arises from a lease agreement between plaintiff CBS Outdoor LLC ("CBS") and defendant California Mini Storage, LLC ("Mini Storage") relating to a billboard structure ("Advertising

---

[1] The Court need not apply the heightened pleading standards of Rule 9(b) to any of defendants' counterclaims because they fail to state a claim under Rule 8.

Structure") constructed on property owned by defendant North Richmond Properties, Inc. ("NRP"). Docket No. 33, Countercl. ¶¶ 10-15. On July 8, 1999, defendant Mini Storage and NRP's predecessor in interest entered into a lease for the purpose of constructing a storage facility on the premises. *Id.* at 8. On February 14, 2001, plaintiff's predecessor, Advertising Display Systems ("ADS"), entered into a lease ("Structure Lease") with defendant Mini Storage for the purpose of installing and maintaining the Advertising Structure on the property. *Id.* ¶ 10. Paragraph three of the Structure Lease ("Ownership Provision") states that ADS retains ownership of the Advertising Structure and can remove it from the property upon termination of the Structure Lease. Countercl. Ex. 2. ("Lessee shall retain ownership of any electrical fixtures and advertising structures placed upon Lessor's property and may remove same upon termination of this lease, notwithstanding the fact that said property may constitute real estate fixtures."). On the same day the Structure Lease was signed, ADS and Mini Storage signed a two-sentence addendum ("Addendum") to the Structure Lease which specified that the Structure Lease "is subject to the terms and conditions of the Ground Lease." *Id.* Plaintiff CBS assumed the role of lessee under the Structure Lease by acquiring all of ADS's interests and obligations in the Advertising Structure and the Structure Lease. Countercl. ¶¶ 14-15.

On January 14, 2014, plaintiff notified Mini Storage that it intended to terminate the Structure Lease and remove the Advertising Structure from the property pursuant to the Ownership Provision. *Id.* ¶ 16. Plaintiff's subsequent application to the San Francisco Planning Department for a permit to remove the Advertising Structure from the property was denied. *Id.* ¶ 17. On February 24, 2014, Mini Storage advised plaintiff not to take any action to remove the Advertising Structure or to impact the defendants' advertising permit. *Id.* ¶ 18. On March 28, 2014, plaintiff responded to Mini Storage and claimed that Mini Storage's refusal to allow plaintiff to remove the Advertising Structure constituted a breach of the Structure Lease. *Id*. ¶ 19; *see also* Countercl., Ex. 7, at 2.

On June 13, 2014, plaintiff filed this lawsuit alleging that defendants unlawfully prevented plaintiff from exercising its right to remove the Advertising Structure upon termination of the Structure Lease. Docket No. 20, First Amended Compl. ("FAC") ¶¶ 16-19. On August 14, 2014, defendants filed an answer that included counterclaims against plaintiff for (1) breach of contract, (2) unfair competition,

(3) intentional interference with contractual relations, (4) intentional interference with prospective economic relations, and (5) declaratory judgment. Countercl. ¶ 1. Defendants allege that the Advertising Structure became property of NRP upon termination of the Structure Lease. *Id.* ¶ 12. More specifically, defendants argue that, pursuant to the Addendum, the Advertising Structure is "subject to" the terms of the Ground Lease, which provides in Section 5.11 that "Title to all Improvements to be constructed on the Premises by [Mini Storage] shall be owned by [Mini Storage] until expiration of the term or earlier termination of this Lease." *Id.* ¶ 9. After termination of the Ground Lease, any such "Improvements" automatically become property of NRP. *Id.* The Ground Lease defines "Improvements" to mean "warehouse/office spaces or mini-storage space, appurtenant parking areas and other related improvements," constructed by "Tenant" (Mini Storage). Countercl., Ex. 1, at 1.

Plaintiff has brought the instant motion to dismiss defendants' counterclaims for failure to state a claim pursuant to Federal Rule of Civil Procedure 12(b)(6). Docket No. 34, Pl.'s Mot. at 1. Plaintiff argues that the Ground Lease does not impact its ownership of the Advertising Structure or its right to remove the Advertising Structure upon termination, as provided in the Structure Lease. *Id.* at 3.

**LEGAL STANDARD**

Under Federal Rule of Civil Procedure 12(b)(6), a district court must dismiss a complaint if it fails to state a claim upon which relief can be granted. Fed. R. Civ. Pro. 12(b)(6). To survive a Rule 12(b)(6) motion to dismiss, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). This "facial plausibility" standard requires the plaintiff to allege facts that add up to "more than a sheer possibility that a defendant has acted unlawfully." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The Court must assume that the plaintiff's allegations are true and must draw all reasonable inferences in the plaintiff's favor. *Usher v. City of Los Angeles*, 828 F.2d 556, 561 (9th Cir. 1987).

Although factual allegations are generally accepted as true for purposes of the motion, the Court is not required to accept as true "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008). The

Court, for example, need not accept as true "allegations that contradict matters properly subject to judicial notice or by exhibit." *Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *see also Steckman v. Hart Brewing, Inc.*, 143 F.3d 1293, 1295-96 (9th Cir. 1998) ("[W]e are not required to accept as true conclusory allegations which are contradicted by documents referred to in the complaint."); *Van Hook v. Curry*, No. C 06-3148 PJH (PR), 2009 WL 773361, at *3 (N.D. Cal. Mar. 23, 2009) ("When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings.").

As a general rule, the Court may not consider materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001). However, pursuant to Federal Rule of Evidence 201, the Court may take judicial notice of "matters of public record," such as prior court proceedings. *Id.* at 688-89. The Court may also consider "documents attached to the complaint [and] documents incorporated by reference in the complaint . . . without converting the motion to dismiss into a motion for summary judgment. *United States v. Ritchie*, 342 F.3d 903, 908 (9th Cir. 2003).

## DISCUSSION

### I. Defendants' Allegations

Section 5.11 of the 7/8/99 Ground Lease between NRP and defendant Mini Storage[2] provides that "Title to all Improvements to be constructed on the Premises by [Mini Storage] shall be owned by [Mini Storage] until expiration of the term or earlier termination of this Lease." Section 3 of the 2/14/01 Structure Lease Agreement between defendant Mini Storage and plaintiff CBS[3] provides that "[CBS] shall retain ownership of any electrical fixtures and advertising structures placed upon [Mini Storage's] property and may remove same upon termination of this lease, notwithstanding the fact that said property may constitute real estate fixtures." Section 1 of the 2/14/01 Addendum provides that

---

[2] The Ground Lease was entered into by these parties' respective predecessors.

[3] The Structure Lease Agreement was entered into by plaintiff CBS's predecessor.

4

1  "The lease is subject to the terms and condition of the Ground Lease for 1111 Pennsylvania Avenue, San Francisco that is incorporated by reference herein."

Defendants allege that the Addendum renders the Advertising Structure an "Improvement[] . . . constructed on the Premises by [Mini Storage]" that became property of NRP under Section 5.11 of the Ground Lease – effectively negating the Ownership Provision of the Structure Lease which confers CBS with the ownership of and right to remove the Advertising Structure.  Countercl. ¶ 12.

In California, the words of a contract, as understood in their ordinary and popular sense, govern the contract's interpretation if the language is clear.  Cal. Civ. Code §§ 1638, 1641.  While the Court must interpret a contract so as to give effect to the mutual intention of the parties, "the intention of the parties is to be ascertained from the writing alone, if possible."  *Id.* at §§ 1636, 1639; *see also Titan Grp., Inc. v. Sonoma Valley Cnty. Sanitation Dist.*, 164 Cal. App. 3d 1122, 1127 (1985) ("It is the objective intent, as evidenced by the words of the contract, rather than the subjective intent of one of the parties, that controls interpretation.").  "The parties' undisclosed intent or understanding is irrelevant to contract interpretation."  *Founding Members of the Newport Beach Country Club v. Newport Beach Country Club, Inc.*, 109 Cal. App. 4th 944, 956 (2003).

The Ownership Provision expressly and unambiguously provides that CBS retains ownership of the Advertising Structure and can remove it upon termination of the Structure Lease.  Countercl. Ex. 2, ¶ 3.  Nonetheless, defendants allege that the Addendum renders the Ownership Provision "subservien[t] to" the terms of the Ground Lease.  Countercl. ¶ 15.  Defendants argue that the parties made the Structure Lease "subject to" the Ground Lease so that the Advertising Structure would revert to NRP under Section 5.11 of the Ground Lease.  Docket No. 39, Defs.' Opp'n at 4.[4]

---

[4] In support of this allegation, defendants attached two declarations to their opposition brief. Docket No. 39-1, Kevin Hicks Decl.; Docket No. 39-2, Defs.' Opp'n. Sherman Little Decl. As a general rule, the Court may not consider any materials beyond the pleadings when ruling on a Rule 12(b)(6) motion. *Lee v. City of L.A.*, 250 F.3d 668, 689 (9th Cir. 2001).  "It is axiomatic that the complaint may not be amended by briefs in opposition to a motion to dismiss."  *Barbera v. WMC Mortgage Corp.*, C 04-3738 SBA, 2006 WL 167632, at *2 n. 4 (N.D. Cal. Jan. 19, 2006) (quoting *Car Carriers, Inc. v. Ford Motor Co.*, 745 F.2d 1101, 1107 (7th Cir.1984)); *see also Arevalo v. Bank of Am. Corp.*, 850 F. Supp. 2d 1008, 1020 (N.D. Cal. 2011); *Fabbrini v. City of Dunsmuir*, 544 F. Supp. 2d 1044, 1050 (E.D. Cal. 2008), *aff'd*, 631 F.3d 1299 (9th Cir. 2011) ("Plaintiff's statements in his opposition brief cannot amend the Complaint under Rule 15.").  Defendants' allegations, advanced for the first time in their opposition

*United States District Court*
*For the Northern District of California*

The phrase "subject to" does not, by its plain meaning, state that the parties to the Structure Lease intended to render the Ownership Provision ineffectual. To the contrary, "[t]he whole of a contract must be read together, so as to give effect to every part, if reasonably practicable[.]" Cal. Civ. Code § 1641. The Court must not interpret contracts in a way that "renders some clauses nugatory, inoperative or meaningless." *City of Atascadero v. Merrill Lynch, Pierce, Fenner & Smith, Inc.*, 68 Cal. App. 4th 445, 473 (1998). The Court thus cannot accept defendants' allegation that Section 5.11 of the Ground Lease trumps the Ownership Provision merely because the Structure Lease was made "subject to" the Ground Lease by addendum. *See* Defs.' Opp'n at 12. Defendants fail to identify any other language in the Structure Lease that may objectively suggest the parties intended for the Advertising Structure to become property of NRP.

Defendants' interpretation of "subject to" is especially unreasonable given that Section 5.11 only governs NRP's title to "Improvements . . . constructed on the Premises by [Mini Storage]." Countercl. Ex.1, § 5.11. In their Answer to plaintiff's FAC, defendants admit that ADS, not Mini Storage, constructed the Advertising Structure. Docket No. 33, Defs.' Answer ¶ 8. In addition, the Ground Lease defines "Improvements" to mean "warehouse/office spaces or mini-storage space, appurtenant parking areas and other related improvements." Countercl., Ex. 1, at 1. Nowhere in their briefs do defendants argue that the Advertising Structure constitutes an "Improvement" under this definition.[5] Finally, Section 5.11 specifies that Improvements become the property of NRP only upon the termination or expiration of the *Ground Lease*, not the Structure Lease. Defendants do not even allege that the 25-year Ground Lease has expired or been terminated, and provide no explanation for why the termination of the Structure Lease would trigger the automatic transfer of all Improvements to NRP.

---

brief, effectively represent a *sub rosa* attempt to the amend their original counter-claim. The Court will not consider them for purposes of ruling on this motion.

[5] Defendants instead contend that the Advertising Structure is an improvement under California common law governing trade fixtures. *See* Defs.' Opp'n at 8-10. However, in California, when parties to a contract mutually agree to define a word or a phrase, courts must adhere to that definition when interpreting the contract. Cal. Civ. Code § 1644.

6

As such, there is no basis in fact for defendants' allegation that the ownership of the Advertising Structure was automatically conveyed to NRP.

All of defendants' claims are premised on the allegation that, pursuant to the Addendum, plaintiff was obliged to surrender the Advertising Structure to NRP. However, this allegation is contradicted by the unambiguous terms of the Structure Lease, even if it is treated as "subject to" the Ground Lease. Countercl. Ex. 2. "When an attached exhibit contradicts the allegations in the pleadings, the contents of the exhibits trump the pleadings." *Van Hook,* 2009 WL 773361, at *3. The Court will not accept such conclusory and unwarranted allegations as true. *See Sprewell*, 266 F.3d at 988; *Skilstaf, Inc. v. CVS Caremark Corp.*, 669 F.3d 1005, 1017 (9th Cir. 2012).

## II. Breach of Contract

Defendants allege that plaintiff breached the Structure Lease and Ground Lease by failing to surrender the Advertising Structure to defendants, by attempting to remove the Advertising Structure through the San Francisco Planning Department, and by filing this lawsuit against defendants. Countercl. ¶ 29. The elements of a cause of action for breach of contract in California are "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal. 4th 811, 821 (2011).

Even drawing all reasonable inferences in favor of the defendants, the counter-claim has not sufficiently alleged that plaintiff breached any contract. As previously stated, the Ownership Provision provides that plaintiff retained ownership of the Advertising Structure and could remove it from the property upon termination of the Structure Lease. *See* Countercl. Ex. 2, ¶ 3. Plaintiff was merely exercising a contractual right when it attempted to remove the Advertising Structure after terminating the Structure Lease. Defendants' conclusory allegation that the Advertising Structure became property of NRP under Section 5.11 of the Ground Lease is not sufficient to establish that plaintiff breached a contract.

7

Plaintiff's motion to dismiss defendants' breach of contract claim for failure to state a claim is therefore granted with leave to amend.

### III. Unfair Competition

Defendants allege that plaintiff's attempt to remove the Advertising Structure from NRP's property was an unfair business practice in violation of California's Unfair Competition Law ("UCL"), California Business and Professions Code § 17200 et seq. Countercl. ¶ 35. California's UCL prohibits unfair competition by means of any unlawful, unfair or fraudulent business practice. Cal. Bus. & Prof. Code § 17200. "Each prong of the UCL is a separate and distinct theory of liability." *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1127 (9th Cir. 2009).

Defendants broadly characterize plaintiff's conduct as "unfair, fraudulent, intentional[ly] deceptive, wrongful, malicious and anti-competitive." Countercl. ¶ 35. Defendants base this claim upon their allegation that, during its efforts to remove the Advertising Structure, plaintiff was aware that Section 604(h) of the San Francisco Planning Code, enacted in 2006, prohibited the erection of new advertising structures once an existing one is removed. *Id.* ¶ 20. Defendants allege that plaintiff's efforts were thus part of a larger scheme designed to eliminate competition and to deprive defendants of their advertising rights and revenue. Countercl. ¶¶ 22, 35-36. However, in California, "laws enacted subsequent to the execution of an agreement are not ordinarily deemed to become part of the agreement unless its language clearly indicates this to have been the intention of the parties." *Swenson v. File*, 3 Cal. 3d 389, 393 (1970); *see also Alpha Beta Food Markets v. Retail Clerks Union Local 770*, 45 Cal. 2d 764, 771 (1955) ("[A]ll applicable laws in existence when an agreement is made, which . . . parties are presumed to know and to have had in mind, necessarily enter into the contract[.]"). Absent language in the Structure Lease suggesting otherwise, Section 604(h)'s prohibition on new advertising structures, adopted five years after execution of the Structure Lease, does not affect plaintiff's contractual right to remove the Advertising Structure under the Ownership Provision. *See, e.g., Clear Channel Outdoor, Inc. v. Erkelens*, 07-06138 SBA, 2008 WL 4534054, at *10 (N.D. Cal. Oct. 7, 2008) (finding that Section 604(h) did not alter terms of a lease entered into prior to 2006).

Plaintiff's motion to dismiss defendants' unfair competition claim for failure to state a claim is granted, with leave to amend.

### IV. Intentional Interference with Contractual Relations

Defendants allege that plaintiff intentionally disrupted the defendants' contractual relations with the San Francisco Planning Department, which issued an advertising permit for NRP's property, by attempting to remove the Advertising Structure from the property. Countercl. ¶ 47. In California, "the elements which a plaintiff must plead to state the cause of action for intentional interference with contractual relations are (1) a valid contract between plaintiff and a third party; (2) defendant's knowledge of this contract; (3) defendant's intentional acts designed to induce a breach or disruption of the contractual relationship; (4) actual breach or disruption of the contractual relationship; and (5) resulting damage." *Quelimane Co. v. Stewart Title Guar. Co.*, 19 Cal. 4th 26, 55 (1998) (citing *Pac. Gas & Elec. Co. v. Bear Stearns & Co.*, 50 Cal. 3d 1118, 1126 (1990)).

Defendants cannot state a claim for intentional interference with contractual relations based upon an advertising permit issued by the San Francisco Planning Department. In California, the relationship between a party and a municipal agency "cannot be characterized as an economic relationship" for purposes of an intentional interference tort claim. *Blank v. Kirwan*, 39 Cal. 3d 311, 330 (1985) (citing *Asia Investment Co. v. Borowski,* 133 Cal. App. 3d 832, 841 (1982)). As a general rule, the tort of intentional interference only protects contractual relations "involved in ordinary commercial dealings – a person's expectancy in the outcome of a government licensing proceeding is not protected against outside interference." *Pac. Gas & Elec. Co.*, 50 Cal. 3d at 1137. As such, defendants' advertising permit from the San Francisco Planning Department does not constitute an economic relationship protected against intentional interference.

Defendants have also failed to sufficiently allege that plaintiff's efforts to remove the Advertising Structure were designed to induce a breach or disruption of the contract. The counter-claim alleges that plaintiff knew that removal of the Advertising Structure would result in the termination of the existing advertising permit and that, under Section 604(h) of the San Francisco Planning Code, no

9

further advertising permits would be issued to defendants. Countercl. ¶¶ 44-45. However, the counter-claim fails to allege facts suggesting that plaintiff's exercise of this right was designed to induce a breach of defendants' advertising permit. The fact that plaintiff's exercise of a contractual right incidentally affects defendants' ability to secure a municipal permit does not rise to the level of contractual interference.

Plaintiff's motion to dismiss defendants' intentional interference with contractual relations claim for failure to state a claim is granted, with leave to amend.

**V.     Intentional Interference with Prospective Economic Relations**

Defendants allege that plaintiff intentionally interfered with defendants' economic relationships with prospective billboard advertisers. Countercl. ¶ 52. In California, the elements for intentional interference with prospective economic relations are: "(1) an economic relationship between the plaintiff and some third party, with the probability of future economic benefit to the plaintiff; (2) the defendant's knowledge of the relationship; (3) intentional acts on the part of the defendant designed to disrupt the relationship; (4) actual disruption of the relationship; and (5) economic harm to the plaintiff proximately caused by the acts of the defendants." *Korea Supply Co. v. Lockheed Martin Corp.*, 29 Cal. 4th 1134, 1153 (quoting *Westside Center Associates v. Safeway Stores 23, Inc.*, 42 Cal. App. 4th 507, 521-22 (1996)). A plaintiff seeking to recover under this cause of action must also plead and prove that the defendant "engaged in conduct that was wrongful by some legal measure other than the fact of interference itself." *Della Penna v. Toyota Motor Sales, U.S.A., Inc.*, 11 Cal. 4th 376, 393 (1995).

The counter-claim fails to allege sufficient facts to state a claim under these elements. First, defendants do not specify any contractual or economic relationship with a third party that plaintiff may have interfered with. Rather, defendants merely allege the existence of a "prospective economic benefit" and a "high probability of future use" of their advertisement permit by unnamed billboard

United States District Court
For the Northern District of California

1 advertisers.[6] Countercl. ¶¶ 51-53. Second, defendants do not allege how plaintiff's exercise of its
2 contractual right to remove the Advertising Structure under the Ownership Provision was designed to
3 disrupt such relationships. Third, defendants do not allege any facts suggesting that these relationships
4 have actually been disrupted, nor do they specify any economic harm already caused by plaintiff's
5 conduct. Finally, defendants do not contend that plaintiff engaged in wrongful conduct besides the
6 alleged interference itself. Defendants' conclusory allegation that plaintiff failed to surrender the
7 Advertising Structure in violation of Section 5.11 of the Ground Lease alone does not establish such
8 wrongful conduct.

9 Plaintiff's motion to dismiss defendants' intentional interference with prospective economic
10 relations claim for failure to state a claim is granted, with leave to amend.

## VI.     Declaratory Judgment

Defendants seek "a judicial declaration of their rights to the [Advertising] Structure and under the contracts." Countercl. ¶ 59. "Federal courts do not have a duty to grant declaratory judgment; therefore, it is within a district court's discretion to dismiss an action for declaratory judgment." *Leadsinger, Inc. v. BMG Music Pub.*, 512 F.3d 522, 533 (9th Cir. 2008). "District courts have dismissed counterclaims under the Declaratory Judgment Act where they have found them to be repetitious of issues already before the court via the complaint or affirmative defenses." *Stickrath v. Globalstar, Inc.*, No. C07-1941 TEH, 2008 WL 2050990, at *3 (N.D. Cal. May 13, 2008) (citing *Ortho-Tain, Inc. v. Rocky Mountain Orthodontics, Inc.*, No. 05 C 6656, 2006 WL 3782916, at *3 (N.D. Ill. Dec. 20, 2006)). However, it is not appropriate to dismiss a counter-claim for declaratory relief merely because it arises out of the same transaction or occurrence as issues raised in the complaint. Fed.R.Civ.Proc. 57. ("The

---

[6] This allegation is inconsistent with defendants' contention, made in an earlier brief, stating: "Here, there is no lucrative transaction pending. At the time CBS filed this lawsuit (or even now) it cannot point to any advertising transactions of any kind benefitting the Defendants that Defendants will actually lose if CBS takes down the billboard structure." Docket No. 27, Defs.' Reply, at 4. This statement served defendants' purposes when arguing that the amount in controversy requirement had not been met for purposes of establishing diversity jurisdiction, but defendants have now apparently reversed course in an attempt to state a claim for intentional interference with prospective economic relations.

11

existence of another adequate remedy does not preclude a judgment for declaratory relief in cases where it is appropriate."). Indeed, "the safer course for the court to follow is to deny a request to dismiss a counterclaim for declaratory relief unless there is no doubt that it will be rendered moot by the adjudication of the main action." Wright, Miller & Kane, Counterclaims and Crossclaims for Declaratory Judgment, 6 Fed. Prac. & Proc. Civ. § 1406 (3d ed.).

Here, there is perfect symmetry between the issues presented in the complaint, and those raised in defendants' counterclaim for declaratory relief. The adjudication of plaintiff's claims for (1) breach of contract; (2) conversion; (3) trespass to chattels; (4) unjust enrichment; (5) intentional interference with contractual relations; and (6) declaratory judgment, FAC ¶¶ 25-55, will necessarily moot any need for "a judicial declaration of [defendants'] rights to the [Advertising] Structure and under the contracts." Countercl. ¶ 59. The Court therefore dismisses defendants' counter-claim for declaratory judgment without prejudice.

## CONCLUSION

For the foregoing reasons, the Court GRANTS plaintiff's Rule 12(b)(6) motion to dismiss defendants' counterclaims for breach of contract, unfair competition, intentional interference with contractual relations, intentional interference with prospective economic relations, and declaratory relief with leave to amend.

**IT IS SO ORDERED.**

Dated: October 15, 2014

SUSAN ILLSTON
UNITED STATES DISTRICT JUDGE